UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HO KAI TAM,

                              Petitioner,

         v.                                                    **DECISION AND ORDER**
                                                               04-CR-109S
                                                               05-CV-202S

DEPARTMENT OF HOMELAND SECURITY,

                              Respondent.

## I.  INTRODUCTION

Presently before this Court is pro se Petitioner Ho Kai Tam's Motion to Vacate, Set

Aside or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255.[1]  For the

reasons discussed below, Petitioner's motion is denied.

## II.  BACKGROUND

Petitioner is a native and citizen of Hong Kong.  On May 27, 2004, he appeared

before this Court, executed a Waiver of Indictment, and pled guilty to a one-Count

Information charging him with committing mail fraud in violation of 18 U.S.C. § 1341.  That

charge carried a possible maximum sentence of 20 years and a $250,000 fine.  (Docket

No. 20, ¶ 1.[2])

Under the terms of the plea agreement, Petitioner and the Government agreed that

the total offense level, including a reduction for Petitioner's acceptance of responsibility,

was 8, and that Petitioner's criminal history category was I, which resulted in a Guidelines

---

[1]In support of his motion, Petitioner filed a memorandum of law, with attachments, and a reply
memorandum of law, with attachments.  In response to Petitioner's motion, Respondent filed a combined
"Answer and Memorandum of Law.

[2]Referring to the plea agreement in this case.

sentencing range of 0 to 6 months, a fine of $1,000 to $10,000, and a period of supervised release of 2 to 3 years.  (Docket No. 20, ¶¶ 10, 12, 13.)  The plea agreement also reflects Petitioner's understanding that this Court would order restitution in the amount of approximately $11,300.  (Docket No. 20, ¶ 2.)  Petitioner and the Government agreed, however, that Petitioner had already paid $6,000 toward restitution prior to entry of the plea, and that therefore the restitution order should reflect the balance of approximately $5,300.   (Docket No. 20, ¶ 2.)   Included in the plea agreement is Petitioner's acknowledgment that he "knowingly waives the right to appeal, or collaterally attack, or modify pursuant to Title 18, United States Code, Section 3582(c)(2), any sentence imposed by the Court that is equal  to or less than any sentence that is within the range set forth in Section II of this plea agreement . . . ."  (Docket No. 20, ¶ 21.)

Before accepting Petitioner's guilty plea, this Court conducted an extensive proceeding in compliance with Rule 11 of the Federal Rules of Criminal Procedure.  This Court placed Petitioner under oath, posed a series of questions to determine his competency, and advised him of his various rights, including his trial right, relative to the charges against him.  (Tr. at 3-9, 14.[3])  During the course of the plea allocution, Petitioner confirmed that he had reviewed the plea agreement with his lawyer, that he understood his lawyer's advice, and that he was satisfied with his lawyer.  (Tr. at 3, 7.)  This Court also invited Petitioner to seek clarification of any information that he did not understand or that was new to him.  (Tr. at 5.)  Following the allocution, this Court concluded that Petitioner understood the nature of the charge against him, confirmed that Petitioner's plea was

---

[3]Referring to the transcript of proceedings before this Court on May 27, 2004.  (Docket No. 37.)

2

knowing and voluntary, and found that the facts supporting the plea were sufficient for a trier of fact to conclude guilt beyond a reasonable doubt.  (Tr. at 21-22.)

On August 20, 2004, Petitioner, through his counsel, filed his Statement with Respect to Sentencing Factors, wherein he indicated that he adopted the findings set forth in the Probation Officer's PreSentence Investigation Report without objection.

On September 24, 2004, this Court sentenced Petitioner to a 3-month term of imprisonment, ordered him to pay $5,400 in restitution, and declined to impose a fine.  The Clerk of the Court filed the sentencing judgment on September 29, 2004.

On March 24, 2005, Petitioner filed the instant timely Motion to Vacate, Set Aside or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255.  He subsequently filed a Motion for Leave to File a late Notice of Appeal, which this Court considered and denied on May 5, 2005.  Petitioner thereafter filed a Motion for Reconsideration of this Court's denial of his Motion for Leave to File a late Notice of Appeal, a Motion to Obtain a Free Transcript, and a Motion to Amend the Sentencing Judgment.  This Court denied these motions on July 11, 2005.

## III.  DISCUSSION

### A.     Standard of Review

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the constitutionality of their sentences.  That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or

is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

The Second Circuit has held that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.' " Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

**B.      Petitioner's Claims**

In his motion, Petitioner raises two principal claims.  First, he contends that he involuntarily entered his waiver of indictment and guilty plea.  Second, he argues that he was denied effective assistance of counsel.

### 1.      Voluntariness of Waiver of Indictment and Plea

Petitioner claims that his waiver of indictment and entry of a guilty plea were not knowing and voluntary because his lawyer failed to explain the plea process and failed to advise him of the possible immigration consequences of entering a guilty plea.  This claim, however, is procedurally defaulted.

It is well-settled that federal prisoners may not use § 2255 as a substitute for a direct appeal.  United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998); see also Reed v. Farley, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.").  This is

4

particularly true in cases where, as here, the petitioner was convicted pursuant to a guilty plea. Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998) (noting that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas") (quoting United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979)).

The Supreme Court has held that the "voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). In cases where a criminal defendant has procedurally forfeited a claim due to his or her failure to raise it on direct appeal, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (a) cause for failing to raise the issue on appeal and prejudice resulting therefrom or (b) actual innocence. Rosario, 164 F.3d at 732.

In the instant case, Petitioner did not file an appeal of his conviction or sentence. As such, his claim that his plea was not knowing and voluntary is procedurally defaulted. Moreover, for the reasons set forth below, this Court finds that Petitioner has not established either cause sufficient to justify his failure to raise his claims on direct appeal or actual innocence.

First, this Court has twice already considered and denied Petitioner's claim that there is cause to permit him to file a late Notice of Appeal. Moreover, the Supreme Court has held that "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." Bousley, 523 U.S. at 621 (quoting Reed v. Ross, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). None of the claims Petitioner asserts herein are novel to such a degree that they could not have been raised

on direct appeal.  Moreover, comparing the nature of Petitioner's proffered appeal issues with the restriction place on his right to appeal in the plea agreement, this Court finds insufficient prejudice to set aside the procedural default.

Second, this Court finds that Petitioner has failed to establish his innocence.  In order to establish actual innocence, Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Rosario, 164 F. 3d at 733 (quoting Bousley, 523 U.S. at 621).  Based on the information contained in the plea agreement and Petitioner's admissions during the plea allocution, this Court finds that a reasonable juror could conclude beyond a reasonable doubt that Petitioner committed mail fraud in violation of 18 U.S.C. § 1341.[4]

Finally, even if the procedural default were set aside and Petitioner's claim was reviewed on the merits, this Court is satisfied that the transcript of the plea allocution overwhelmingly demonstrates that Petitioner entered his guilty plea knowingly and voluntarily.  As it does with each criminal defendant entering a guilty plea, this Court took great pangs to ensure that Petitioner's plea was knowing and voluntarily.  The following exchange occurred:

> The Court:     All right.  That seems to be the full agreement here. Any other promises made to you that you are relying on that are not in this written plea agreement?  This plea agreement, does it contain all of the promises that are made to you?
>
> The Defendant:   Yes.

---

[4]Paragraph 6 of the plea agreement sets forth the factual basis supporting Petitioner's conviction. During the plea allocution, Petitioner acknowledged that he understood the information contained in that paragraph and stated that he did not dispute any portion of the contents of that paragraph. (Transcript at 15-16.)

| | |
|---|---|
| The Court: | Okay.  Anybody force or threaten you to sign this plea agreement? |
| The Defendant: | No, sir. |
| The Court: | Anybody force or threaten you to enter a plea of guilty in this case? |
| The Defendant: | No. |
| The Court: | And you signed it on the advice of your lawyer?  The plea agreement. |
| The Defendant: | Yes. |
| The Court: | All right.  And you understood it when you signed it? |
| The Defendant: | Yes, sir. |

(Tr. at 20-21).

| | |
|---|---|
| The Court: | . . . I find that your plea of guilty is a knowing plea.  In other words, you understand the terms, conditions, and possible consequences that you face, correct? |
| The Defendant: | Yeah. |
| The Court: | And that what you did today you did voluntarily, nobody forced or threatened you, is that correct? |
| The Defendant: | Yes. |

(Tr. at 21-22.)

Moreover, this Court explicitly instructed Petitioner to interrupt the plea allocution at any time if he wanted to consult with his lawyer or if he was uncertain of the information being discussed:

| | |
|---|---|
| The Court: | . . . If there's any question at all about what you feel comfortable saying, or about the understanding of what we're doing, you let me know.  I will give you time to talk with your attorney, Mr. Torre, so you get it worked out, is that clear? |

7

The Defendant:      Yes, sir.

(Tr. at 4.)

The Court:          All right.  Now, I'm going to be going over things that I believe - - or I'm confident Mr. Torre has already gone over with you.  If anything seems new or makes you uncomfortable, you let me know, we'll take the time and we'll get it worked out, is that clear?

The Defendant:      Yes.

(Tr. at 5.)

These exchanges demonstrate that Petitioner knowingly and voluntarily waived his right to indictment and knowingly and voluntarily pled guilty.  Accordingly, even if it were proper to excuse the procedural default and address the merits of Petitioner's claims, his claims fail.

### 2.    Ineffective Assistance of Counsel

Petitioner's second claim is that he was denied effective assistance of counsel. Although this claim was also not raised through direct appeal, the Supreme Court has held that an ineffective assistance of counsel claim may be raised in a § 2255 motion even if it was not raised on direct appeal.  Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 1696, 155 L.Ed.2d 714 (2003); see also Graff v. United States, 269 F.Supp.2d 76, 78-79 (E.D.N.Y. 2003) (discussing Massaro).  Accordingly, this Court will address the merits of Petitioner's ineffective assistance of counsel claim.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  It is well-established that "the right to counsel is the right to the effective

assistance of counsel." <u>Eze v. Senkowski</u>, 321 F.3d 110, 124 (2d Cir. 2003) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

The standard for determining whether a defendant was provided with effective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To establish a claim under the <u>Strickland</u> standard, "a defendant must show (a) that counsel's representation 'fell below the objective standard of reasonableness' based on 'prevailing professional norms' and (b) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Eze</u>, 321 F.3d at 123 (quoting <u>Strickland</u>, 466 U.S. at 688, 694).  When a conviction is secured by way of plea, the second <u>Strickland</u> factor is modified to require a defendant to demonstrate that but for counsel's unprofessional errors, he would not have pled guilty.  <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); <u>Tate v. Wood</u>, 963 F.2d 20, 26 (2d Cir. 1992).  There is a strong presumption in favor of the reasonableness of an attorney's performance.  <u>See</u> <u>Gilbert v. United States</u>, 05-CV-325, 2006 WL 1174321, at *3 (N.D.N.Y. May 2, 2006) (citing <u>Strickland</u>, 466 U.S. at 688).

### a.    Pre-plea Ineffectiveness

Petitioner first argues that his attorney was ineffective because he failed to fully explain the plea agreement and the possible immigration consequences of entering a guilty plea.  With respect to plea negotiations, the Second Circuit has held that "[d]efense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." <u>Pham v. United States</u>,

317 F.3d 178, 182 (2d Cir. 2003) (citing <u>Boria v. Keane</u>, 99 F.3d 492, 498 (2d Cir. 1996)).

Petitioner's post-conviction, self-serving claim that his lawyer failed to explain the plea

agreement to him is contradicted by his own sworn statements at the plea allocution,

during which he advised this Court, under oath, of the following:

| | |
|---|---|
| The Court: | I have - - you should have in front of you, Mr. Tam, three documents, the plea agreement document, the criminal information, and the waiver of indictment form. Do you have those? |
| The Defendant: | Yes, sir. |
| The Court: | Have you gone over those with Mr. Torre? |
| The Defendant: | Yes, sir. |
| The Court: | Do you understand them? |
| The Defendant: | Yes, sir. |
| The Court: | Do you understand his legal advice to you? |
| The Defendant: | Yes. |
| The Court: | Okay.  Are you satisfied with Mr. Torre as your lawyer? |
| The Defendant: | Yes, sir. |

(Tr. at 2-3.)

| | |
|---|---|
| The Court: | And you signed it on the advice of your lawyer?  The plea agreement. |
| The Defendant: | Yes. |
| The Court: | All right.  And you understood it when you signed it? |
| The Defendant: | Yes, sir. |

(Tr. at 20-21).

| | |
|---|---|
| The Court: | . . . I find that your plea of guilty is a knowing plea. In other words, you understand the terms, conditions, and possible consequences that you face, correct? |
| The Defendant: | Yeah. |
| The Court: | And that what you did today you did voluntarily, nobody forced or threatened you, is that correct? |
| The Defendant: | Yes. |

(Tr. at 21-22.)

Moreover, even accepting Petitioner's assertion that his lawyer did not explain the immigration consequences of a guilty plea, counsel's actions were not objectively unreasonable. The Second Circuit has held that "an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of reasonableness." United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002)[5] (citing United States v. Santelises, 509 F.2d 703, 704 (2d Cir. 1975) (per curiam) (noting that an attorney's failure to inform a defendant that a guilty plea could result in deportation "is of no legal significance")); see also United States v. Salerno, 66 F.3d 544, 550-51 (2d Cir. 1995) (holding that an attorney's failure to advise of collateral consequences of a plea does not amount to ineffective assistance of counsel).

In any event, it appears from Petitioner's own papers that he discussed with his attorney the possibility that his plea could have immigration consequences. Petitioner

---

[5]In Couto, the Second Circuit also ruled that "affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable." 311 F.3d at 188. The record in this case does not support any contention that Petitioner's counsel affirmatively misrepresented the immigration consequences of Petitioner's plea. Rather, by Petitioner's own admission, his lawyer advised him that he may be removed from the United States due to his criminal conduct. Other than his own bald assertion, there is nothing in the record to suggest that Petitioner was not fully informed that entering his guilty plea could adversely affect his immigration status.

11

asserts that his attorney advised him that entering a guilty plea with the possibility of no imprisonment could inure to his benefit because a conviction after trial and a sentence of imprisonment could cause immigration officials to commence removal proceedings. (Docket No. 27, ¶ 12 (Petitioner asserts that his attorney advised him to "just plea guilty and you will get no time in jail, because if you go to jail (someone will) start Immigration proceedings . . . If you don't go to jail – you'll be fine.")).   Thus, by his own admission, Petitioner was on notice that entering a guilty plea could have adverse immigration consequences.

Finally, although Petitioner states that he would not have entered a guilty plea if he knew of the immigration consequences, nothing in the record suggests that Petitioner would have elected to exercise his trial right.  It therefore cannot be concluded that but for counsel's alleged errors, Petitioner would not have entered a guilty plea.  Thus, Petitioner's claim fails the <u>Strickland</u>/<u>Hill</u> test on both prongs.

### b.    Post-plea Ineffectiveness

Petitioner also contends that his lawyer failed to adequately represent him at sentencing.  Petitioner predominantly complains that his lawyer failed to object to the amount of loss used to calculate his offense level and failed to object to the PreSentence Investigation Report.  As indicated above, however, Petitioner waived his right to appeal his sentence if it fell within the agreed-upon Guideline range, which it did.  (Docket No. 20, ¶ 21.)

It is well-settled in the Second Circuit that and individual's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon Guideline range is

enforceable.  See, e.g., United States v. Hernandez, 242 F.3d 110, 113 (2d Cir.2001) (per

curiam); United States v. Djelevic, 161 F.3d 104, 106 (2d Cir.1998) (per curiam).  However,

the Second Circuit has carved out an exception to the enforceability of the appeal waiver,

holding that the waiver does not apply when a defendant claims that he received ineffective

assistance from his counsel in entering into the plea agreement.  See Frederick v. Warden,

Lewisburg Corr. Facility, 308 F.3d 192, 195-96 (2d Cir. 2002); Hernandez, 242 F.3d at 113-

14; Djelevic, 161 F.3d at 107.  The Second Circuit has directed that the "refusal to apply

such a waiver provision in these circumstances only allows appellate review of the

constitutionality of the process by which the plea agreement was consummated.  If the

constitutionality of that process passes muster, the plea agreement's waiver would bar any

consideration by the appellate court of issues that fall within the scope of that waiver."

Hernandez, 242 F.3d at 114.

As discussed above, there is no merit to Petitioner's claim that he did not knowingly

and voluntarily enter his guilty plea, or that he received ineffective assistance of counsel

in violation of the Sixth Amendment prior to entering his plea.  As such, since this Court

has determined that the plea process in this case passes constitutional muster, the waiver

provision in the agreement must be given effect to bar consideration of Petitioner's

sentencing complaints.

Even if this Court were to consider Petitioner's post-plea claims, it would conclude

that he did not receive ineffective assistance of counsel.  Petitioner is operating under the

misunderstanding that the amount of loss calculation should have been reduced by the

$6,000 he paid in restitution prior to entering his plea.  However, the Guidelines are clear

that the loss calculation is reduced by the amount of money returned by a defendant to a

13

victim only when it is returned before the criminal offense is detected.  See U.S.S.G. §

2B1.1.  Here, the criminal offense was detected in 2002, and Petitioner did not remit the

$6,000 until May of 2004.  Thus, the amount of loss properly did not account for the

$6,000.  Petitioner's counsel therefore did not err in failing to object to the loss calculation

or to the PreSentence Report.

Consequently, even if this Court were to set aside Petitioner's waiver of his appeal

rights, this Court finds that Petitioner has failed under the Strickland test to demonstrate

that his lawyer's representation was objectively unreasonable and that there is a

reasonable probability that, but for counsel's unprofessional errors, his sentence would

have been different.  See Strickland, 466 U.S. at 688, 694.

### c.    Appeal Ineffectiveness

Finally, Petitioner argues that his attorney was ineffective because he failed to file

an appeal of his sentence.  As previously discussed, Petitioner received a sentence that

fell within the Guideline range contemplated by his plea agreement.  Under the terms of

that agreement, Petitioner forfeited his right to appeal or collaterally attack a sentence that

fell within the agreed upon range.  As such, this Court cannot conclude that counsel's

failure to file an appeal under these circumstances was objectively unreasonable or that

an appeal would have been successful.

### C.    Certificate of Appealability

For a certificate of appealability to issue, the petitioner must make a "substantial

showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).  To make the

required "substantial showing" the petitioner must establish that "reasonable jurists could

debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Rhagi v. Artuz</u>, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations omitted). Petitioner has made no such substantial showing of the denial of a constitutional right in this case.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside or Correct his Sentence is denied. If Petitioner wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255 (Docket No. 27) is DENIED.

FURTHER, that a Certificate of Appealability is DENIED.

FURTHER, that the Clerk of the Court is directed to close both 04-CR-109S and 05-CV-202S.

SO ORDERED.

Dated:  May 16, 2006
        Buffalo, New York

                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge